UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
HENRY O'HENRY, *pro se,*　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　Petitioner,　　　　　　　　:　　**MEMORANDUM AND ORDER**
　　　　　　　　　　　　　　　　　　　:　　05-CV-4752 (DLI)(LB)
　　　　　-against-　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
SUPERINTENDENT,　　　　　　　　　　　:
Watertown Correctional Facility,　　　　　　:
　　　　　　　　　　　　　　　　　　　:
　　　　　　　Respondent.　　　　　　　:
-------------------------------------------------------x

**DORA L. IRIZARRY, U.S. District Judge:**

On January 10, 2003, Henry O'Henry ("Petitioner" or "O'Henry") was convicted in New York State Supreme Court, Kings County, after a trial by jury, of second-degree assault in violation of New York Penal Law § 120.05. On February 10, 2003, O'Henry was sentenced to a term of two and one-half years imprisonment. After a number of unsuccessful challenges to the conviction in state court, described more fully below, O'Henry, *pro se,* now petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner never sought a *writ of certiorari* before the United States Supreme Court. The grounds for the instant petition are that Petitioner's conviction was not supported by legally sufficient evidence, that the prosecutor improperly shifted the burden to Petitioner to prove his innocence, and that the prosecution failed to disprove Petitioner's justification defense beyond a reasonable doubt. For the reasons set forth below, the petition is denied.

**I.　　Statement of Facts**

　　*The Altercation*

On April 17, 2002, at approximately 12:20 p.m., Petitioner attacked Alpha Omar ("Omar")

1

with a machete. The attack occurred in A & A Fashions, a store located at 428 Rockaway Avenue, Brooklyn. (Tr. at 218-224).[1] At the time of the attack, Omar was speaking with a store clerk and had his back to the door. (Tr. at 217-218). According to Omar, without warning, Petitioner struck him in the head from behind. *Id.* Omar turned around, fell to the floor, and tried to move backwards to escape while Petitioner continued striking him. (Tr. 223-225).

As the attack was occurring, Curtis Ratliff ("Ratliff"), a store employee who had been standing outside, heard the commotion and entered the store. (Tr. at 283). Ratliff found Omar on the floor bleeding profusely and "pleading for his life" while Petitioner stood over him swinging the machete "like he was chopping coconuts." (Tr. at 283-286). Omar testified that throughout the attack, Petitioner screamed "I'm gonna kill you, I'm gonna kill you," and "I'm gonna chop your head off." (Tr. at 224, 231).

Ratliff pleaded with Petitioner to stop attacking Omar and threw a chair between the two in an attempt to stop the attack. (Tr. at 230, 289). Ratliff then attempted to grab Petitioner, but Petitioner turned and swung the machete at Ratliff. (Tr. at 231). Ratliff grabbed the chair and attempted to calm Petitioner down asking him, "come on, man, why you doing this." (Tr. at 231-232). Petitioner fled the store still holding the machete. (Tr. at 290). Omar followed Petitioner outside, where Petitioner stood for a few moments, still holding the machete. (Tr. at 234). When Omar asked bystanders to call the police, the Petitioner fled. (Tr. at 234).

Police Officer Ryan Malcolm ("Malcolm") and Police Officer Darin Hederian ("Hederian") arrived on the scene moments later. (Tr. at 234, 311). The uniformed officers pursued Petitioner. (Tr. at 313-314, 340). During the chase, Petitioner threw the machete away. It was later recovered

---

[1] "Tr." refers to the transcript of the jury trial held January 3 and January 10, 2003.

by Hederian. (Tr. at 342, 345). Once Petitioner was caught and subdued, Omar identified Petitioner as the attacker. (Tr. at 236). Malcolm testified that, after being identified, Petitioner turned to Omar and said "next time I'll chop your head off." (Tr. at 322).

An ambulance soon arrived and Emergency Medical Technician Janet Dillon ("Dillon") found Omar on the ground bleeding from wounds behind his left ear. Omar also had a lacerated left ear and injuries to his left hand and his left leg. (Tr. at 350-351). The wound on Omar's hand revealed tendons and some superficial bone and the laceration on his leg was three to four inches long and to three inches wide. (Tr. at 352). The laceration on Omar's head was three inches long and was deep enough to see the cover to the base of Omar's skull. (Tr. at 351-352). Omar's ear was split in half so that the ear was "literally two separate flaps." (Tr. at 353).

At trial, Omar displayed his scars. (Tr. at 226). He testified that the left side of his head and his ear continued to hurt when the weather was cold and sometimes, even without the cold, his head hurts for thirty or forty seconds at a time. (Tr. at 238). Omar also testified that his hearing was not as good as it was before the attack and that he was no longer able to jog without pain. (Tr. 238-239).

Petitioner testified in his own defense. Petitioner did not deny attacking Omar with a machete, but claimed that he acted in self-defense. According to Petitioner, he and Omar were friends until they had a falling out several months before the incident in question. (Tr. at 385). Petitioner testified that since their falling out, Omar harassed him and threatening his life. (Tr. at 384-385). Petitioner claimed that he was afraid of Omar because he had heard stories of Omar throwing a man from a third story window and punching a store clerk who had caught him stealing. (Tr. at 394-396).

According to Petitioner, his fear of Omar was exacerbated when, the day before the incident

3

in question, Petitioner saw Omar driving the wrong way down a one-way street with a "dark-skinned guy" in the passenger seat. (Tr. at 386). Petitioner heard shots fired from inside the car and believed that Omar was attempting to kill him. *Id.* Petitioner started running and saw the car chasing him and continuing to fire shots at him. (Tr. 384-386).

With respect to the events of April 17, 2002, Petitioner's account is radically different from Omar's. Petitioner testified that when Omar arrived at A & A Fashions, Petitioner was standing outside minding the goods he was selling. Omar came up to him, stepped on his shoes and pushed him into a belt rack. (Tr. at 389). After being pushed into the belt rack, Petitioner followed Omar into the store. Petitioner then asked Omar why he kept bothering him. Omar then "leaned down on one knee and came back up." Petitioner saw that Omar was attacking him with a machete. *Id.* The two struggled for control of the machete, and, in the course of the struggle, Omar was cut. (Tr. at 390). When Petitioner saw blood, he got scared, grabbed the machete from Omar and hit Omar with it several times because he knew that Omar "always had a gun, every time I see him" and "if he got up he might shoot at me again." (Tr. at 390-392). When Petitioner fled he kept the machete because he didn't want Omar to get it back and use it on him. (Tr. at 393-394). Petitioner also testified that Ratliff never threw a chair between him and Omar. (Tr. at 405).

In order to dispute the seriousness of Omar's injuries, Petitioner called Doctor Wayne Longmore ("Longmore"), a board-certified emergency physician to testify. Longmore testified that Omar's hand injuries were "superficial lacerations" because, even though the cut went through the skin, revealing tendons, the tendons were not touched. (Tr. at 522-525). Longmore opined that, after some suturing, there might be a "small" scar on his hand but, "you'd probably forget which hand was cut five years later." (Tr. at 525-526). If no medical care had been provided, "a Band-Aid would

4

have done the trick." (Tr. at 526). Similarly, Longmore thought the leg injury involved "a very … sort of glancing blow or a very superficial laceration." (Tr. at 527) Regarding the ear injury, Longmore testified that Omar's medical records showed no notation that he suffered any injury to the structure of the ear and there was no medical reason for Omar to suffer any kind of hearing impairment. (Tr. at 528-529). Longmore testified that, based on the weight of the machete, if Omar had actually been struck forcefully, Omar's head injury would have been at least a few inches deep. (Tr. at 531-532).

*The Prosecutor's Summation*

During his summation, the Prosecutor remarked on Petitioner's cross-examination of Omar and Ratliff. The Prosecutor stated the following:

> After defense counsel so eloquently hammered home on their marijuana and driving without a license, after that, I was ready, I was ready, I had my pen in hand, I said now here we go. We're going to get to the fact of the matter why we're here today. I even got a fresh piece of paper out, ladies and gentlemen. I was ready, here we go, we're going to get to it. Why are we here today? Turn our attention to it, that's it. I sat up in my seat and I got ready. This was the moment we're all waiting for. This is the moment we're here for, ladies and gentlemen, and what moment was that? What happened next?
>
> I'll tell you what happened next, ladies and gentlemen. Nothing happened next. Not one question was asked of Alpha Omar about the incident. Not one. You could have it read back but there's nothing to read back. Not one question.
>
> Why are we here today? We're here because this man took this machete and tried to kill Alpha Omar, yet not one question. That is so telling, ladies and gentlemen. That is so telling that not one question was asked. Why do you think that is?
>
> Then we turn our attention to Curtis, and there's not one question asked of Curtis about the incident. If you remember, ladies and gentlemen, think about it. All the question about the incident from . . . Alpha Omar and Curtis came from me. Think about it. Remember that. Not one question.
>
> Defense counsel had every opportunity to ask, didn't ask once. Why? I'll tell you why, ladies and gentlemen. You know why? The reason is because what happened in that store is what happened in that store [sic]. Alpha Omar was trying to be killed [sic] by this man Henry O'Henry and they know it. That's why. That's

5

why, ladies and gentlemen. They know it. They know what happened. He tried to kill him. That's why not one question was asked. Not one. We're here all week, ladies and gentlemen.

   MS. LUKAS [DEFENSE COUNSEL]: Your Honor, I'm going to object. This is burden-shifting. I don't have to ask any questions in this case.

THE COURT: Sustained – overruled.
  Ladies and gentlemen, your recollection of the testimony will control, not any characterization by either of the attorneys.

(Tr. 602-604). Afterwards, Defense counsel did not object to the judge's curative instructions as insufficient and did not request a mistrial. During the final jury charge, the judge instructed the jury that "[i]n every criminal case the burden of proof to establish the guilt if the defendant rests with the prosecution. The burden remains with the prosecution throughout the trial and never shifts to the defendant." (Tr. 641).

*Procedural History*

With the assistance of counsel, Petitioner appealed his conviction to the Appellate Division, Second Department, arguing (1) that the evidence presented at trial relating to the victim's injuries was legally insufficient to support his conviction; (2) that he was denied a fair trial because, during summation, the prosecution improperly shifted the burden of proof to the defense; and (3) the prosecution failed to disprove Petitioner's justification defense beyond a reasonable doubt.

On December 13, 2004, the Appellate Division affirmed the conviction, holding that Petitioner's legal sufficiency claim was not preserved for appellate review and the evidence was "legally sufficient to establish the defendant's guilt beyond a reasonable doubt." *People v. O'Henry*, 13 A.D.3d 470 (2d Dep't 2004). The Appellate Division further held that Petitioner's "challenge to certain comments made by the prosecutor during summation is also not preserved for appellate

review," and "in any event, any error was harmless under the circumstances." *Id.* Finally, the Appellate Division held that Petitioner's claim that the prosecution failed to disprove his justification defense beyond a reasonable doubt was "without merit." *Id.*

On February 24, 2005, the New York Court of Appeals denied Petitioner leave to appeal. *People v. O'Henry*, 4 N.Y.3d 801 (2005). Petitioner did not seek certiorari from the Supreme Court of the United States. On or about March 18, 2005, Petitioner submitted a *pro se* motion to vacate judgment to the Supreme Court, Kings County, alleging ineffective assistance of counsel. Judge Collini summarily denied the motion on April 8, 2005. In the instant *pro se* petition, which was timely filed on March 24, 2005, Petitioner raises the identical claims he argued on direct appeal.

On April 8, 2005, Petitioner was released from prison but was immediately re-arrested for unrelated crimes. On December 12, 2006, Petitioner was deported back to his home country of Nigeria based on the second degree assault conviction at issue and because he was identified as an "overstay."[2] When Petitioner was released from prison he failed to provide this Court with any new

---

[2] Petitioner's deportation does not render this case moot because the challenged conviction has the collateral consequence of permanently barring Petitioner from re-entering the country. *Perez v. Greiner,* 296 F.3d 123, 126 (2d Cir. 2002) ("[i]f . . . the present conviction . . . stands, [Petitioner] will be barred from ever reentering the United States without permission of the United States Attorney General . . . Such a barrier to reentry clearly would suffice to prevent [the] habeas petition from being mooted.").

However, according to Respondent, Petitioner has two additional third degree assault convictions, which may bar him from reentry independent of the current conviction. *See* ECF Docket No. 6. Thus, this petition may be moot regardless of its outcome since it would have no collateral effect– Petitioner is barred from reentry even if his conviction which is the subject of the instant Petition is vacated. *Perez v. Greiner,* 296 F.3d at 126 ("because [Petitioner] is permanently inadmissible to this country due to his prior drug conviction, collateral consequences cannot arise from the challenged robbery conviction, and the petition is moot."). However, the two third degree assault convictions were not relied on by the government in deporting Petitioner, and therefore it is unclear if they can be a bar to reentry. ECF Docket No. 6. The court need not address this tricky area of immigration law and administrative law because the Petition is denied, therefore rendering the mootness issue irrelevant.

information regarding his whereabouts and did not make any effort to notify this Court of his deportation. At present, Petitioner remains at an unknown location, presumably outside the United States.

## II. Discussion

*The Court is Barred from Reviewing Petitioner's Insufficiency of Evidence Claim and the Prosecutor's Statements During Summation.*

Federal courts may not review state court decisions that rest on an adequate and independent state procedural default. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In this case, the Appellate Division found that Petitioner's claim of burden shifting and Petitioner's claim that there was insufficient evidence to establish guilt are procedurally barred because they were not preserved for appellate review when Petitioner, at trial, failed to contemporaneously object. *People v. O'Henry*, 13 A.D.3d at 470. New York's contemporaneous objection rule, N.Y. Criminal Procedure Law § 470.05(2), requires that an objection be lodged at the time of the ruling or "at any subsequent time when the court had an opportunity of effectively changing the same… [and] is sufficient if the party made his position with respect to the ruling or instruction known to the court." *Id.*

The first question to be addressed is whether or not Petitioner contemporaneously objected to those rulings which he now asks the federal district to court to review. *See Garvey v. Duncan*, 485 F.3d 709 (2d Cir. 2007). New York courts require a specific objection to preserve an issue for appeal: a general objection, or an objection that does not inform the court regarding the "nature and scope" of the objection, is insufficient. *People v. Gray*, 86 N.Y.2d 10, 19 (1995). A review of the record indicates that neither Petitioner's claim that evidence was legally insufficient nor the Petitioner's burden shifting claim was preserved for appellate review.

A thorough review of the record indicates that Petitioner never raised his claim that the evidence was legally insufficient at trial. At the close of testimony, Petitioner moved to dismiss the indictment claiming that the People's evidence was insufficient to prove assault in first degree, N.Y. Penal Law § 120.10. (Tr.556-559). However, petitioner was convicted of assault in the second degree, N.Y. Penal Law § 120.05. The difference between assault in the first degree and assault in the second degree is the severity of the injury. Thus, in arguing for the dismissal of the indictment, the Petitioner alleged that the prosecutor failed to prove that the victim's injuries were serious, a requirement of assault in the first degree but not assault in the second degree. *Id; compare* N.Y. Penal Law § 120.05 (McKinney 2006) *with* N.Y. Penal Law § 120.10 (McKinney 2006). Simply put, Petitioner failed to "provide the trial court with a fair opportunity to consider the legal issue" of whether the prosecution met its burden of showing "physical injury" under N.Y. Penal Law § 120.05. *See Garvey v. Duncan*, 485 F.3d at 715-716; *Donaldson v. Ercole,* 06 CV 1810, 2006 WL 3335113, *3 (E.D.N.Y. Oct. 23, 2006)*;People v. Parsons*, 30 A.D.3d 1071 (4th Dep't 2006).

Petitioner's claim that the prosecutor inappropriately shifted the burden of proof to the defense is similarly not preserved for appellate review. The record indicates that Petitioner objected to the prosecutor's statement because it constituted "burden shifting." (Tr. 604). The objection was either sustained or overruled, the record is not clear and the court instructed the jury that their recollection of the testimony controlled. Petitioner failed to move for a mistrial or object to the curative instruction given. Where a defendant's objection is sustained, but the defendant fails to request additional relief, the contemporaneous objection rule bars review. *See People v. Medina,* 53 N.Y.2d 951, 441 N.Y.S.2d 442, 424 N.E.2d 276 (1981); *Simpson v. Portuondo*, 01 Civ. 1379, 2001 WL 830946, *11 & n. 38 (S.D.N.Y. July 12, 2001) (Peck, M.J.) ("[u]nder New York law, in

9

order to preserve his claims for appellate review, [petitioner] was required to raise his challenges to the prosecutor's alleged errors in summation by way of specific objections before the trial court, and, if his objections were sustained, seek further relief.")(citing cases). The court finds that Petitioner's failure to move for additional relief after the court sustained Petitioner's objection to the prosecutor's summation bars additional review. Moreover, the jury was instructed that the burden of proof remains with people at all times.

New York's contemporaneous objection rule has been held, time and again, to constitute an adequate state law basis to bar federal habeas review. *Garcia v. Lewis*, 188 F.3d 71, 82 (2d Cir. 1999) (holding that New York's contemporaneous objection rule was an adequate grounds to foreclose federal review because it was "firmly established and regularly followed."). However, the Supreme Court has instructed lower courts to evaluate the application of state procedural bars on a case-by-case basis. *See Cotto,* 331 F.3d at 240; *Donaldson v. Ercole*, 06 CV 1810, 2006 WL 3335113, *3 (E.D.N.Y. Oct. 23, 2006) ("[t]he adequacy of a state procedural rule is determined with reference to the particular application of the rule in the case at issue.").

In *Lee v. Kemna*, 534 U.S. 362 (2002), the Supreme Court made clear that "a violation of 'firmly established and regularly followed' state rules . . . will be adequate to foreclose review of a federal claim [but there are] exceptional cases in which exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." 534 U.S. at 376, 122 S.Ct. 877; *Garvey v. Duncan,* 2007 WL 1345328 ("[s]ince the adequacy of a state procedural bar to the assertion of a federal question is itself a federal question . . . we must ascertain whether the state rule at issue here is firmly established and regularly followed, and further whether application of that rule in this case would be exorbitant.").

In the case at bar, the court looks to the following factors to determine whether the contemporaneous objection rule is adequate or exorbitant: (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state case law indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2003) (internal quotations omitted). These three factors are not a test for determining adequacy; rather, they are guideposts for evaluating the state's interest in a procedural rule in the circumstances of a particular case. *Cotto*, 331 F.3d at 240.

Applying those factors to the case at bar, it is clear that the contemporaneous objection rule bars federal habeas review. First, with respect to whether the violation was relied upon by the trial court, as the court noted in *Cotto* "the lack of a contemporaneous objection would not, almost by definition, be mentioned by the trial court." *Id.* at 242. Thus, it is impossible to say whether or not the trial court relied on the contemporaneous objection rule in making its decision. Similarly, it is highly speculative to say that if Petitioner's counsel contemporaneously moved to dismiss the case for lack of sufficiency of evidence or moved for a mistrial based on the prosecutor's remarks, that the court would have done either. *See Cotto,* 331 F.3d at 244. However, had Petitioner raised these issues at the trial level, which he failed to do, the court at least would have been able to address them. *See Garvey*, 2007 WL 1345328 at *8 (finding that the first factor weighs in favor of allowing the procedural bar where the failure to contemporaneously object did not give the trial court the opportunity to address the issue).

11

With respect to the second factor, whether state case law indicates that compliance with the rule was demanded, as noted above, time and again New York courts have demanded compliance with the contemporaneous objection rule in exactly these circumstances. *See, e.g., Gray,* 86 N.Y.2d at 19 (applying the contemporaneous objection rule to an insufficiency of evidence claim); *Medina,* 53 N.Y.2d at 953 (applying the contemporaneous objection rule to a claim of inappropriate comments during a prosecutor's summation).

Finally, the third factor, whether the Petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest, also shows that the application of the contemptuous objection rule is not exorbitant. The entire purpose of the contemporaneous objection rule is to allow the court to address the concern *before* it becomes an appealable issue. *See Garvey,* 2007 WL 1345328 *9. Here, the court is not demanding fidelity to the rule for the rule's own sake. Rather, because Petitioner did not appraise the court that it believed that there was insufficient evidence to prove assault in the second degree and did not inform the court that the prosecutor's comments required a mistrial or some other relief, the court was not able to address those issues. Clearly, the State has a legitimate interest in enforcing the contemporaneous objection rule, if only not to be sandbagged by appeals which bring up issues that should have been raised at trial.

Therefore, the court finds that it cannot address Petitioner's first two claims due to an independent and adequate state law procedural default.

Even when habeas claims are barred by an adequate and independent state ground, if "the prisoner can show cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental

12

miscarriage of justice" a federal court can consider the claim despite the bar. *Coleman*, 501 U.S. at 750. The only cause for the default here was Petitioner's counsel's failure to object, and default resulting from inadvertence or negligence is not considered "cause" for a default. *Id.* at 753 ("[attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"). Likewise, Petitioner is not entitled to have the procedural default excused due to "actual innocence" because he has not put forward any new evidence. *See Schlup v. Delo*, 513 U.S. 298 (1995).

Finally, the fact that the Appellate Division also denied Petitioner's claims on the merits is of no moment. If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court, in the alternative, also rejected the claim on the merits. See *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

*Failure to Disprove Justification Defense Beyond a Reasonable Doubt*

At trial, the Petitioner asserted that he was justified in striking Omar with the machete because Omar instituted the attack. The jury was instructed that the prosecution had the burden of proof of demonstrating "beyond a reasonable doubt" that the Petitioner was not justified in his attack. (Tr. 651). New York law allows for the use of "physical force" when a person "reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of" force by the attacker. *See* N.Y. Penal Law § 35.15(1). However, in order to use "deadly physical force" to stop an attack, the defendant is required to demonstrate that

13

"retreating" was out of the question. *See* N.Y. Penal Law § 35.15 (2). If only physical force is used, but not deadly physical force, there is no duty to retreat. On the theory that Petitioner's use of the machete did not constitute deadly physical force, but only constituted physical force, Petitioner's counsel asked that the court not instruct the jury as to the requirement that Petitioner retreat before striking Omar. (Tr. 505-509). The trial court rejected Petitioner's argument and found that use of a machete constitutes deadly force. *Id.* The jury found that Petitioner was not justified in attacking Omar and found him guilty of assault in the second degree.

Defendant alleges that his Fourteenth Amendment Due Process rights were violated when he was convicted of second degree assault without the prosecution disproving his justification defense beyond a reasonable doubt. The Appellate Division did not find that Petitioner's claim that the prosecution failed to disprove his justification defense was procedurally barred, but rather found that "defendant's remaining contention is without merit."[3] 13 A.D.3d at 440. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), where claims in state court are "adjudicated on the merits," the federal district court may grant a petition for a writ of habeas corpus only upon a finding that the state court proceeding

> (1) resulted in a decision that was contrary to, or involved an unreasonable

---

[3] A review of the record indicates that Petitioner's counsel made a request to the trial court to modify the jury charge to include a justification defense and the court denied the request. (Tr. 505-509). All the elements of a contemporaneous objection were present in as much as the Petitioner made his objection to the jury instructions known by asking the court to revise the jury instruction, even if Petitioner did not mention the constitutional challenge *per se*. *Cotto*, 331 F.3d at 245-47. Requiring that the Petitioner actually state the reason why he believed the jury instructions should be revised would be a hyper technical interpretation of New York's contemporaneous objection rule, and would be exorbitant in this case. *See Lee v. Kemna*, 534 U.S. at 383. In any event, the Appellate Division did not invoke the state procedural bar, and there is no reason for this court to do so. *See Fama v. Commissioner of Correctional Services,* 235 F.3d 804, 810-811 (2d Cir. 2000).

14

> application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring and writing for the majority). Habeas relief is available under the "unreasonable determination" clause "if the state court identifies the correct governing principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. In reviewing the state court decision, "a determination of a factual issue made by a state court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). The Appellate Division's finding that Petitioner's due process claim is "without merit" was not contrary to federal law.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970). "This standard applies with equal force to the sufficiency of proof as to a defense, such as justification under N.Y. Penal Law §§ 25.00(1), 35.00 which the prosecution is required to disprove beyond a reasonable doubt." *Ledesma v. Cunningham*, No. 03

15

Civ. 6322, 2004 WL 1775677, at *11 (S.D.N.Y. Aug.10, 2004). When a federal habeas petitioner challenges his conviction on appeal and claims that his guilt (or a defense) was not proven (or disproved) beyond a reasonable doubt, the conviction must be upheld if "any rational finder of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307 (1979). On review, all inferences are drawn in favor of the prosecution, and the court must uphold a verdict based on reasonable inferences, even those drawn solely from circumstantial evidence. *See United States v. Quattrone*, 441 F.3d 153, 169 (2d Cir. 2006); *Daughtry v. Conway,* 03 CIV 4836R, 2006 WL 2850260, *12 (S.D.N.Y., Sept. 29, 2006) (applying the *Jackson* standard to a habeas petitioner's claim that the prosecution failed to disprove a defense beyond a reasonable doubt). Even if the record is not entirely clear, a "federal habeas court faced with a record of historical facts that support conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson,* 443 U.S. at 326.

Petitioner argues that he was justified in striking Omar with the machete because Omar initiated the attack. However, the record clearly indicates that Petitioner could have retreated instead of striking Omar, thus negating any justification for the machete strike. In fact, Petitioner testified that nothing prevented him from escaping from Omar's alleged attack once Petitioner had grabbed the machete. (Tr. 472-473); *In re Y.K.*, 87 N.Y.2d 430, 434 (1996) ("[i]f a defendant confronted with deadly force knows retreat can be made with complete safety and fails to do so, the defense [of justification] is lost."). In this case, the jury was more than rational in rejecting Petitioner's justification defense and it was not contrary to clearly established Supreme Court law for the Appellate Division to find that the jury was correct..

16

## III. Conclusion

For the reasons set forth above, Henry O'Henry's petition for a writ of habeas corpus is denied in its entirety. Petitioner is further denied a certificate of appealability as he fails to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see* FED. R. APP. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); *Luciadore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).

SO ORDERED.

DATED: Brooklyn, New York
July 24, 2007

/s/
DORA L. IRIZARRY
United States District Judge